IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## JUDITH TRENT DENTON v. HERBERT JACKSON DENTON, JR.

**Direct Appeal from the Chancery Court for Sullivan County**
**No. 15-246     Richard E. Ladd, Chancellor**

_____

**No. E1999-02713-COA-R3-CV - Decided May 25, 2000**

_____

This is a divorce case. The parties were married in 1966; the following year, they purchased 37.6 acres of unimproved real property in Sullivan County. They acquired the property at a chancery court auction for $16,000. They subsequently constructed a log cabin with 2,294 square feet of living space, and commenced a farming operation on the premises. On April 19, 1979, the husband executed a quit claim deed to the wife ostensibly conveying to her his interest in the subject property, now improved with the residence -- property that previously had been owned by the parties as tenants by the entirety. Following a bench trial, the court below held that the value of the property at the time of the conveyance constitutes the wife's separate property[1]; it went on to hold that a portion of the increase in value of the property since then is separate property while the remainder is marital property. The husband appeals, contending that he did not intend to make a gift to the wife of his interest in the property. In the alternative, he argues that all of the increase in value is marital property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

SUSANO, J., delivered the opinion of the court, in which SWINEY, J., joined. GODDARD, P.J., not participating.

John P. Chiles of Kingsport, Tennessee, and Thomas F. Bloom of Nashville, Tennessee, for the appellant, Herbert Jackson Denton, Jr.

David S. Haynes of Bristol, Tennessee, for the appellee, Judith Trent Denton

**OPINION**

_____

[1]The judgment of divorce declares the parties divorced and makes a number of other decrees regarding their property. Except to the limited extent indicated later in this opinion, none of these decrees are relevant to the issues on this appeal.

The husband's issues in this case focus on (1) the classification of the parties' 37.6 acres of land improved with a log cabin residence and (2) the division of that property between the parties. Since this is a non-jury case, our review is *de novo* upon the record of the proceedings below. That record comes to us with a presumption of correctness as to the trial court's factual findings, a presumption that we must honor unless the evidence preponderates against those findings. Rule 13(d), Tenn. R. App. P. We review the trial court's conclusions of law *de novo* with no presumption of correctness. **Adams v. Dean Roofing Co.,** 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986).

When addressing the property of divorcing parties, a court must first classify that property as marital or separate. **Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Once classified, the separate property is awarded to the party to whom it is separate in nature, and the marital property is divided between the parties in an equitable fashion. **Brock v. Brock**, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).

In the instant case, the trial court held that the husband executed the quit claim deed for the purpose of vesting title to the property solely in the wife. The court was particularly influenced in its decision by the following language in the quit claim deed.

> It is expressly understood by and between the parties hereto that the purpose of this conveyance is to dissolve the tenancy by the entireties under which the parties have heretofore held title to the above-described real property and to vest the full and complete title to same in the party of the second part, her heirs and assigns, subject only to the lien indebtedness hereinabove assumed by her.

Commenting that it "ha[d] no choice," the court found that the subject property was "separate property when that Deed was signed." At another point in its opinion, the court opined that the deed "leaves me no alternative, other than to declare separate property on that made in April of 1979."

The husband contends that the trial court erroneously decided that the execution of the quit claim deed required the court to find, *as a matter of law*, that the husband had made a gift to the wife of his interest in the property. The husband relies on unreported decisions[2] of this Court for the proposition that the execution of a deed is not conclusive evidence of a gift. He argues that the execution of the quit claim deed in the instant case is not *conclusive* evidence of a gift but rather only *rebuttable* evidence of donative intent.

---

[2] *See* **Abney v. Abney**, C/A No. 181, 1991 WL 16255 (Tenn. Ct. App. E.S., filed February 12, 1991); **Robbins v. Robbins**, C/A No. 01A01-9201-CV-00031, 1992 WL 187637 (Tenn. Ct. App. M.S., filed August 7, 1992).

It is not entirely clear from the record whether the trial court found that the quit claim deed with the quoted language[3] required the court to find, *as a matter of law*, that a gift had been made. As we have previously indicated, the trial court was obviously influenced by the deed's language; however, the record does not conclusively demonstrate that the court's use of the phrases "no choice" and "no alternative" meant that it was finding a gift solely because the law required such a finding. Another possible interpretation of the court's comments is that it felt compelled by the *facts* of the case, *i.e.*, the preponderance of the evidence, to find that the husband had made a gift of his interest to the wife.

It is not necessary in this case to decide exactly what motivated the trial court to find a gift from the husband to the wife. This is true because we find that the *facts* do not preponderate against a finding of a gift. Our focus is on the result reached by the trial court, *i.e.*, that there was a gift. We must affirm the trial court if it reached the correct result even if we disagree with the reasoning employed by the court to arrive at that result. *See* Rule 36(a), Tenn. R. App. P.; *see also* **Kelly v. Kelly**, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984).

The wife testified that in April, 1979, when her health was such that she had decided to take a medical leave of absence from her teaching position, her husband announced that he had quit his job "last week" and was going to devote full time to building houses. She testified that he said -- apparently before she told him of her planned leave of absence -- "that's all right. We'll live off what you make and I'll be bringing in a little...too." She testified that he thereafter gave two reasons for conveying the property to her:

> This is what he said. He said that this would be my security. That I would never have to worry about not having a home, no matter what decisions he made, I would have a home. And the other one was he was in a small business at that time and it was a high risk of liability. And I did not request it. He actually just simply did this.

According to the wife, her husband executed the deed against the advice of his attorney.

Husband denied at trial that he intended to make a gift of his interest in the subject property to his wife; but his testimony regarding the conveyance is strikingly similar to that of his wife:

> Q. Right, you said you did not have any legal advise about signing and delivering the Deed. Had you engaged in real-estate transactions before this Quitclaim Deed, you had of course had you not?
>
> A. I bought the place that we live on.

---

[3]The husband correctly points out that the language of the quit claim deed in the instant case is functionally identical to deed language in the **Abney** case, which, as previously indicated, is a case where we found that no gift had been made. *See* 1991 WL 16255 at *2.

Q. So you knew that when you received the Deed, you owned the property, correct?

A. Well, at the time I signed this, there's no discussion. I didn't get any advice on this particular matter.

Q. You said that, but knew what a Deed did. It transfers title of property, real estate, doesn't it?

A. Roughly.

Q. Yeah, roughly. You knew you were transferring title, your half interest to this real estate to your wife. You knew that would do that, didn't you?

A. That was for her security. That was the reason for it.

Q. I understand that's the reason, but you knew it would transfer it, didn't you?

A. Give her security, that's the reason for it.

Q. And you knew it would, in fact, transfer title, didn't you?

A. It would transfer title.

When the parties' testimony is considered along with the language of the quit claim deed and the entire record,[4] we cannot say that the evidence preponderates against a finding that the husband made a gift of his interest in the property to the wife. If he wanted his wife to feel secure, and if he executed the deed to achieve this result, it logically follows that the way he was going to make her feel secure was to put the property in her name, so that, regardless of what happened in his new business venture, she would own the property outright. Thus, while, as a general proposition, we agree with the husband that a quit claim deed is not conclusive evidence of a gift in every case, we cannot say that the trial court erred in its finding of a gift in view of the totality of the facts of this case.

---

[4]There is evidence in the record that the wife, post-deed, made major decisions regarding the property without the involvement of the husband. For example, the wife, on her own, leased a portion of the property to her father and later obtained a home equity loan on the property. The making of these major decisions, without the involvement of the husband, is further proof tending to support the wife's position that the deed was executed for the purpose of transfering husband's interest as a gift.

In *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988), we said the following:

> This Court has construed [T.C.A. § 36-4-121(b)(2)] to mean that gifts by one spouse to another of property that would otherwise be classified as marital property are the separate property of the recipient spouse.

*Id*. at 856. Since we find that the transfer of the husband's interest in the subject property by quit claim deed was a gift from the husband to the wife, the entirety of the value of the property is the wife's separate property as of the date of the transfer to her. As such, it is not subject to division between the parties. *Brock*, 941 S.W.2d at 900. The Husband's issue with respect to the classification of the value of the subject property at the time of the transfer to the wife is found adverse to him.

In his second issue, the husband argues that the trial court erred in concluding that the increase in value of the subject property that occurred after it was transferred to the wife -- to the extent that the increase is attributable to inflation -- continued to be the separate property of the wife. We agree with the husband that the trial court erred in so finding.

The proof in the record reflects that the husband, post-deed, devoted considerable time and effort to the maintenance and upkeep of the property and to the building of structures on the property. He built a 72-foot by 24-foot unattached garage, and helped his father-in-law build a large storage building and shop. After the date of the deed, he personally fenced all of the property except for a small portion along the main road. He installed electric fencing around most of the property. He "put culverts over the creeks," made a cattle corral, and installed a new cattle guard. In addition, he constructed the foundation for a barn and ran power and water to the new site. The following excerpts from the transcript further reflect his efforts with respect to the property:

> Q. All right. What, if anything, have you done toward the maintenance of the land since 1979?
>
> A. It's been just about continuous. I've, every Saturday and many evenings I worked on the land. That's what I did. It's been continuous.
>
> Q. Well, you've got to tell His Honor what you did, Mr. Denton.
>
> A. Okay. The fence repairs, when the creek washed out the fence, I put the fence back. I put culverts over the creeks. I put an electric fence around most of the property. Cleared the trees off the fence when they fell, fertilizer, lime, weed control, made a cattle corral. Which I believe is, matches any in the County, to corral the cattle, help get the cattle up. Gates, interior gates, clear and boar as need be, cut firewood from the trees that's fell down, picked rocks up out of

-5-

the field, pulled up weeds with my own hands when I had to. It's just been a continuous labor of love, just a continuous thing from, it never ended. It was continuous. Any day I was there I did maybe, worked on it just about any day I was there.

Q. Did you have any problems with erosion?

A. Any, I corrected those, have corrected those.

Q. What work did you have to do?

A. Well, mainly, it's just move trees, trees or stumps or rocks, putting in the place where the erosion starts and it will be able to stop itself after a time, if it's tended to timely.

Q. Did you ever have to do any mowing on the property?

A. Mowed every....

Q. Do you still?

A. Do I still, yes, I do still. Mowing or and/or bush hogging.

Q. Is that an annual thing?

A. Annual thing, once or twice a year.

Q. What part of the 37.6 acres do you have to mow and bush hog and take care of?

A. It would mainly be grazing area, which is approximately 20 acres that are cleared.

While downplaying the husband's efforts, the wife testified that "Herb would fix things" at the residence. It is likewise clear that monies expended on the house and acreage post-deed came from the incomes of the parties, which, of course, constituted marital monies.

It is clear that the husband expended substantial efforts with respect to the subject property after the execution of the quit claim deed. The trial court found as much:

Now, there's no doubt that Mr. Denton could tell you he worked hard on this property after [execution of the quit claim deed]. The more difficult problem is to re-determine what, through hard work, increased the value and what was just by the fact that the area of the

County they live in became very popular to a lot of people and the prices went up.

Wife argues that the real estate appraiser, whose report, by agreement, was accepted as his testimony in lieu of his personal appearance, opined that the efforts of the husband did not substantially contribute to the appreciation in value that occurred after the execution of the quit claim deed. We do not find this in the appraiser's written report. First, the report does not refer specifically to the husband's efforts. Second, the only reference to those efforts is one by implication and it is found in a section of the report entitled "Preamble":

> This report deals with a one and one-half story log dwelling unit of approximately 2,294 square feet of living area plus partially finished basement facility, built circa 1976, in average condition, situate on the above referenced site. An older dwelling unit is located on the site, uninhabited for some time, built circa 1920, in poor condition and adjudged to add no appreciable value. Other site improvements include a 24' x 40' workshop plus an implement shed or barn. No specific value for farm related structures, i.e. barns, fencing, etc. is revealed, their being included in the overall value per acre for the property which is acceptable appraisal technique for acreage tracts where such improvements may or may not contribute greatly to the value of the whole.

We do not read this portion of the report as suggesting that the structures, upon which the husband worked, did not add to the value of the property. While "[n]o specific value" is assigned for these structures, the report clearly indicates that this is because their value is "included in the overall value per acre for the property." The efforts of the husband with respect to the overall property were substantial during the years that followed the execution of the quit claim deed. Those efforts are such as to support a finding that they helped the property to maintain its value and increase in value over time. There is nothing in the report to indicate otherwise.

The trial court concluded that two-thirds of the increase in the value of the acreage,[5] as distinguished from the improvements, was due to the fact that the area where the property is located "became very popular to a lot of people" and was not due to the efforts of the parties. As to the residence itself, the court found that all of the increase in value is marital property.[6] We do not dispute the fact that inflation was a factor in the increase in the value of the underlying acreage; but this finding does not lead to a conclusion in this case that any portion of the increase is separate property. It is clear that the husband "substantially contributed to [the] preservation and

---

[5]The trial court found that the other one-third is marital property and divided it equally between the parties.

[6]The trial court equally divided this marital property component.

appreciation" of the property, *viewed as one piece of property.* *See* T.C.A. § 36-4-121(b)(1)(B) (1996). We recognize that the expert who testified in this case considered inflation in determining the increase in value of the acreage from 1979 to the date of the divorce hearing; but this does not lessen the legal effect of the husband's efforts, both physical and financial, with respect to the *overall* property. In this case, we do not find it appropriate to analyze the land and improvements as separate and distinct entities. While real estate is typically appraised in this manner, this does not mean that this is the appropriate analysis when applying the marital property - separate property dichotomy. As a general rule, a piece of real estate should be considered as a whole when making the subject analysis.

This case is controlled by the decision of the Supreme Court in the case of ***Ellis v. Ellis***, 748 S.W.2d 424 (Tenn. 1988). In reversing the Court of Appeals' decision limiting the husband's marital property interest to the amount of appreciation that could be traced to his efforts, the high court said:

> The Court of Appeals concluded that the trial court had abused its discretion in thus dividing the marital property of the parties and, accordingly, set that division aside and made its own division of marital property. The Court of Appeals held that the full appreciation in value of the big house during the marriage of $51,700 was not to be considered as marital property, but that only $7,455 of that appreciation should be considered as marital property, that being the sum that the husband had expended on improvements and repairs on the big house property during the marriage. The court held "that the major portion of the increase in price of the big house was due primarily to the substantial increase in the value of inflation that took place during that time and, therefore, would not be considered marital property but instead would be treated as the separate property of the wife." In our opinion, the Court of Appeals in so concluding, erred since the statute, T.C.A. § 36-4-121(b)(1) clearly states that "any increase in value during the marriage" of such property shall be included as marital property subject to division. The word "any" is all inclusive and does not allow an exception based on inflation, as held by the Court of Appeals.
>
> The only condition imposed in the statute for treating any increase in value during the marriage as marital property is the provision, "if each party substantially contributed to its preservation and appreciation." This condition was amply supported in the evidence. As above mentioned, the Court of Appeals in its own findings found that the husband had contributed $5,544 on improvements to the big house property. This clearly proved that the husband had "substantially contributed to its preservation and appreciation," as found by the trial judge. This evidence satisfied the condition thus

-8-

required but it did not limit the husband's right to share in the full appreciation of the property during the marriage to the amount which he alone had thus contributed to its maintenance and repair. Having established that the condition had been complied with, the husband was entitled to share fully in the whole appreciation and value of the big house *property* during the marriage.

*Id*. at 426-27. (Emphasis added). "Substantial contributions are ones which are real and significant. They need not be monetarily commensurate with the appreciation in the property's value during the marriage." *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989).

The instant case is factually different from the Supreme Court case of *Harrison v. Harrison*, 912 S.W.2d 124 (Tenn. 1995). In *Harrison*, the Supreme Court found that property worth $7,000 at the time of the parties' marriage was valued at $1,361,750 at the time of the divorce. The Court held that all of the increase was separate property because the proof in that case showed that the *sole* cause of the increase was the construction of an interstate highway through the property. *Id*. at 127. That is not the proof in the instant case. Here, the husband made substantial contributions to the preservation and appreciation of the subject property.

In *Harrison*, the Supreme Court recognized that once the threshold condition was satisfied, *all* of the increase in value of *all* of the property is marital property. The fact that *all* of the increase in value should be considered marital property in that situation is shown by the following comment in the Supreme Court's opinion:

> Application of the rule stated in *Ellis* to the facts of this case would require the conclusion that if the evidence proved that the wife had contributed substantially to the preservation and appreciation in value, *the entire amount of the increase in value would be marital property*; but, since the evidence does not show that the wife substantially contributed to the preservation or appreciation of the property, the increase in its value is not marital property.

*Id*. at 127. (Emphasis added). Under *Ellis* and *Harrison*, it matters not that inflationary factors also impacted the value of this property. Once the threshold condition is satisfied, the entirety of the increase in value is marital property.[7] T.C.A. § 36-4-121(b)(1)(B).

The evidence reflects that the value of the real property increased from $114,000 to $300,000. This increase -- $186,000 -- is all marital property under the statute.

---

[7]We are not unmindful of the decision of a panel of the Western Section of this Court in the case of *Elam v. Elam*, C/A No. 02A01-9812-CH-00362, 1999 WL 669847 (Tenn. Ct. App. W.S., filed August 30, 1999). Suffice it to say that we believe our approach in the instant case is in keeping with the language in the *Ellis* and *Harrison* cases.

The trial court equally divided the property found by it to be marital. The evidence does not preponderate against a finding that an equal division of marital property in this case is an equitable one. Therefore, it is appropriate to equally divide the $186,000 increase in value of the subject property between the parties.

The wife's request for an award against the husband for her fees on appeal is denied. Such an award is not appropriate in this case.

The judgment of the trial court finding that a portion of the increase in value of the subject property is separate property is reversed. This case is remanded for the entry of an order dividing all of the increase in value equally and for such further decrees as may be required to effectuate such a division. In all other respects, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellee.