# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 28, 2014 Session

## LORETTA M. GAITHER v. MICHAEL DELEON GAITHER

**Appeal from the Circuit Court for Hamilton County**
**No. 12D459      Jacqueline S. Bolton, Judge**

---

**No. E2013-02681-COA-R3-CV - Filed October 13, 2014**

---

This is a divorce action involving the proper classification and division of the parties' assets. The trial court found one asset, a baby grand piano, to be the wife's separate property as it had been a gift to her from the husband. All other assets were determined to be marital. The most valuable asset was the parties' marital residence, which was appraised at a value of $475,000. Although the trial court awarded the marital residence to the wife rather than ordering it to be sold, the trial court deducted twenty percent from the home's equity value for the associated costs had it been sold. The trial court subsequently fashioned a nearly equal percentage distribution of the marital assets and debts, which included an allocation of a portion of the equity in the home to the husband. The husband has appealed. We determine that the trial court correctly classified the piano as the wife's separate property. We also determine that the trial court improperly deducted the costs associated with a hypothetical sale of the marital residence from its equity value. We therefore modify the trial court's award of equity in the home to the husband to effectuate the trial court's ostensible overall percentage distribution. We affirm that equitable distribution in all other respects. We decline to award the wife attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., joined. CHARLES D. SUSANO, JR., C.J., filed a concurring opinion.

Whitney Durand, Chattanooga, Tennessee, for the appellant, Michael Deleon Gaither.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Loretta M. Gaither.

**OPINION**

I.  Factual and Procedural Background

This divorce action involves a twenty-eight-year marriage between Loretta Gaither ("Wife") and Michael Gaither ("Husband").  Husband is a medical doctor who at the time of trial was age fifty-eight.  Wife is a nurse anesthetist who at the time of trial was age fifty-seven.  The parties accumulated significant assets during the marriage, the most valuable being their marital residence.  The parties also amassed a sizeable amount of joint debt.

According to the evidence in this cause, Wife's annual gross earnings for the five years prior to trial were:

| | |
|------|----------|
| 2007 | $196,620 |
| 2008 | $113,314 |
| 2009 | $117,187 |
| 2010 | $132,497 |
| 2011 | $174,948 |

At the time of trial, Wife testified that she was earning $14,000 per month as an independent contractor with an employer in Georgia.  Husband presented his social security statement of earnings for the past several years.  Husband's earnings in some years, even as recently as 2000, were almost nothing while in other years he earned nearly $200,000 in gross income annually.  At the time of trial, Husband testified that he had recently received a job offer in North Carolina, where he would be making $185,000 per year.

Both parties testified that they intended to continue their employment for the foreseeable future.  It was undisputed that Husband suffered from cardiomyopathy, requiring the use of a pacemaker and an automatic implantable cardioverter defibrillator ("AICD").  Husband explained that this medical condition caused him to leave private practice to reduce stress and pursue work in the employ of other parties.  Wife battled breast cancer when she was thirty-eight years old but has not experienced a recurrence.

Wife claimed that Husband had serious anger problems and was prone to fits of rage, causing him to experience significant employment setbacks through the years.  According to Wife, they were forced to move numerous times due to Husband's inability to maintain employment.  As Husband explained, he worked and supported Wife while she attended school to become a nurse anesthetist.  Wife likewise related that during her employment, she supported Husband during his final two years of medical school.

Following a bench trial, the parties' divorce was granted upon a stipulation of grounds pursuant to Tennessee Code Annotated § 36-4-129. The trial court also entered the following pertinent findings of fact and conclusions of law:

Wife's contentions at trial are that she was the primary wage earner as a nurse anesthetist. Though Husband is a physician, he has held numerous jobs throughout the marriage, some years making zero income and some years making as much as $97,000. Primarily though his income was in the $20,000 to $30,000 range. Wife currently makes $168,000 a year. Wife contends that the majority of Husband's insurance and retirement funds came from her earnings. Wife also contends that Husband has a serious anger problem which has detrimentally affected his employment as well as the parties' marriage.

At the time of trial however, Husband says he has a job offer in North Carolina where he will make $185,000.

As to the parties' home, Husband values it at the $600,000 range. Wife says the value is closer to $400,000. Husband concedes that at least $80,000 to 100,000 worth of work is needed to improve the home before it could be sold. The house shall be appraised and Wife shall be allowed to purchase Husband's interest in said home for the full appraisal value. Once the appraisal is done, Husband shall receive some equity which the Court will then determine.

The remaining assets and liabilities are divided as follows:

| Asset Description | Marital Equity | To Wife | To Husband |
|---|---|---|---|
| Thrift Savings Plan Invesco | 23,796 | | 23,796 |
| Invesco IRA | 79,548 | | 79,548 |
| Pioneer Investments IRA | 12,554 | | 12,554 |
| Invesco IRA | 85,051 | | 85,051 |
| Bon Secours Retirement | 1,962 | 1,962 | |
| Anesthesiologist Associated 401(k) | 341,083 | 341,083 | |
| Old Line #[policy number] | 6,465 | 6,465 | |

| | Marital Equity | To Wife | To Husband |
|---|---|---|---|
| Old Line #[policy number] | 5,000 | 5,000 | |
| Old Line #[policy number] | 1,177 | 1,177 | |
| Old Line #[policy number] | 8,140 | 8,140 | |
| Liberty National #[policy number] | 6,527 | | 6,527 |
| Old Line #[policy number] | 11,805 | | 11,805 |
| Old Line #[policy number] | 10,299 | | 10,299 |
| Old Line #[policy number] | 12,904 | | 12,904 |
| Old Line #[policy number] | 9,051 | | 9,051 |
| Furniture | equally divided | | |
| Navy Federal Credit Union Checking | 5,000 | 5,000 | |
| Navy Federal Credit Union Money Market | 5 | 5 | |
| Navy Federal Credit Union Savings | 2,000 | 2,000 | |
| USAA Bank Account - checking | 1,978 | | 1,978 |
| Timeshare Starwood Vacation Ownership | 0 | 0 | Timeshare |
| Piano - Baby Grand | Gift | Piano | |
| 2000 Lexus ES300 | 4,872 | | 4,872 |
| 2006 Lexus 430SC | 5,643 | 5,643 | |

| Liabilities Description | Marital Equity | To Wife | To Husband |
|---|---|---|---|
| Credit Card USAA | 22,371 | | 22,371 |
| Credit Card Navy Federal | 10,115 | | 10,115 |

| | | | |
|---|---|---|---|
| (2) Credit Card(s) AMEX | 29,181 | 29,181 | |
| Credit Card VISA | 28,000 | 28,000 | |
| Exxon Mobile | 400 | 400 | |
| USAA HELOC | 58,812 | | |
| NationStar Mortgage | 12,415 | | |

Wife is restored to her maiden name of McGainey. Each of the parties shall pay their own attorney's fees. Costs are taxed equally to both parties, for which execution may issue if necessary.

Husband subsequently filed a motion asking the trial court to make additional findings of fact regarding the value of the home and the final allocation of assets and liabilities, based on the completed appraisal valuing the home at $475,000. Husband also requested that the trial court amend its ruling regarding the piano and designate the asset as marital property. Thereafter, the trial court entered a second order, which provides in pertinent part:

> The parties have now told the Court that the appraisal which the Court sought for the parties' marital home resulted in a value of $475,000.00. Approximately $71,000.00 is owed on the mortgages, leaving a net equity of approximately $403,735.00. Deducting twenty percent (20%) for cost of sale, (if the parties had sold the house) the Court finds the net equity would have been $323,020.00. Based upon the former findings that the Court has made in its Memorandum Opinion of October 1, 2013, the Court ORDERS that the Husband's share of that equity should be $150,000.00.

Husband timely appeals.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by classifying the piano as Wife's separate property.

2. Whether the trial court erred by awarding to Wife a greater portion of the net marital estate, including a greater portion of the equity in the marital residence.

Wife presents the following additional issue:

3.      Whether Wife should receive an award of attorney's fees on appeal.

### III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Further, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. §36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the

marital property without regard to fault on the part of either party.  An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted).  *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV.  Classification of Property

Husband posits that the trial court erred in classifying the piano valued at $24,000 as Wife's separate property.  He argues that Wife failed to prove the piano was a gift and that the monies supporting the purchase came from their joint funds.  Wife asserts that the trial court's classification was correct because Husband admitted that the piano was his gift to Wife.  Upon our review of the evidence and record in this case, we agree with Wife.

It is well settled that assets acquired during a marriage are presumed to be marital property, and that a party desirous of disputing this classification has the burden of proving by a preponderance of the evidence that the asset is separate property.  *See Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007).  Therefore, our analysis of the proper classification of this asset must begin with the presumption that it is marital property as it was purchased during the parties' marriage.  This presumption can be rebutted, however, by evidence of circumstances or communications clearly indicating an intent that the property remain separate.  *See Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1989).  As this Court has previously explained, the types of evidence sufficient to rebut the presumption are found in Tennessee Code Annotated § 36-4-121(b)(2)(B)-(F) (2014):

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

*Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *4 (Tenn. Ct. App. Sept. 1, 2006) (referencing the statutory definition of "separate property" found in Tennessee Code Annotated § 36-4-121(b)(2)(B)-(F)).

In the instant action, Wife listed the piano as her separate property on the asset statement she submitted at trial. According to Wife, she classified the piano as such because it was purchased for her by Husband when the parties built the marital home. Wife related:

Well, it was always known that I wanted a piano. That's my hobby. Probably more than anything playing the piano is my hobby. So when we built the house, we built a house with a piano room. We said the first thing we would fill the room with would be my piano. So we went out and purchased that. And we were together when we purchased it.

Husband testified that he bought the piano in 1990, purchasing it by utilizing a portion of Wife's bonus and paying the balance with his funds. Husband admitted that it was Wife who desired the piano as he did not play the instrument. Further, Husband stated in two unsworn pleadings that the piano was a gift from him to Wife.

As previously explained, this Court must give considerable deference to the trial court's factual finding regarding the proper classification of an asset. *See Keyt*, 244 S.W.3d at 327. Based upon the evidence presented, we conclude that the trial court did not err in its classification of the piano as Wife's separate property. Husband admitted that Wife wanted the piano and that he purchased it specifically for her. A gift from one spouse to another during the marriage is considered the donee spouse's separate property. *See Denton v. Denton*, 33 S.W.3d 229, 233 (Tenn. 2000); *Batson*, 769 S.W.2d at 859. The evidence preponderates in favor of the trial court's finding that the piano was a gift to Wife; therefore, the trial court properly classified this asset as Wife's separate property.

## V. Equitable Division of Marital Property

Husband contends that the trial court erred in its division of the marital estate. Specifically, Husband asserts that the trial court improperly divided the equity in the marital residence by only allocating $150,000 to him. The equity in this improved real property was established to be the most significant asset in the marital estate.

The trial court determined the value of the marital residence to be $475,000 based on

an appraisal obtained by the parties following the trial. As the court deducted the debt associated with the marital residence, the equity value was found to be $403,735. The court deducted an additional twenty percent for costs associated with a sale of the home, had one been accomplished. The "net equity value" was accordingly set at $323,020. From this "net equity value," the trial court awarded Husband $150,000.

Husband posits that the trial court erred in deducting twenty percent for the cost of selling the home, as there was no proof of such expense presented at trial. Wife asserts that the trial court properly considered this cost in the event Wife was unable to purchase Husband's interest. It is undisputed, however, that (1) Wife had been approved for a loan to purchase Husband's interest, (2) the house was not listed for sale, and (3) no proof was presented to support an expense of sale totaling twenty percent. According to Wife, she wanted to retain the home as her sole property. She expressed no desire to sell the asset.

We agree with Husband that the trial court erred in deducting twenty percent for the costs associated with a possible sale of the home inasmuch as Wife made clear that she did not intend to sell it. The parties had not listed the home for sale, and there was a dearth of evidence regarding any potential costs that might be associated with selling the home. Wife testified that she wished to keep and occupy the residence. The trial court granted her request, awarding the home to her and awarding Husband a share of the "net" equity. In the absence of ordering the home to be sold, however, the trial court had insufficient basis to reduce the equity value by the cost of selling the home. Such a calculation resulted in an inequitable windfall to Wife regarding the equity value of this asset awarded solely to her.

As this Court has explained:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property. In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results.

*Payne v. Payne*, No. E2006-02467-COA-R3-CV, 2007 WL 2668588 at *4 (Tenn. Ct. App. Sep. 12, 2007) (internal citations omitted). Further, the trial court is to consider the following statutory factors in making an equitable distribution:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability,

earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

This case involves a marriage of twenty-eight years. The parties are of similar age and earning capacity. Both have experienced health issues but not to an extent that they are

prevented from continuing in their employment. Each party contributed to the education and increased earning power of the other, and both contributed to the marital estate as wage earners. The parties would appear to possess equal ability to acquire assets in the future, and neither was shown to have dissipated assets. Further, neither party possessed a significant estate at the time of the marriage, and neither owned a significant amount of separate property at the time of the judgment of divorce.

Utilizing the "net equity value" of the marital residence of $323,020 as found by the trial court, Wife was awarded a total of $549,495 in marital assets and $143,808 in marital debts. Husband was awarded $408,385 in marital assets and $32,486 in marital debts. Therefore, the trial court's overall distribution awarded 52% of the marital estate to Wife and 48% to Husband. Considering the evidence presented in light of the applicable factors, we find this nearly equal percentage distribution to be equitable. *See Payne*, 2007 WL 2668588 at *4. As noted previously, however, the trial court's reduction of the equity value in the marital residence by the costs of a hypothetical sale has resulted in a windfall to Wife of $80,715[1] in equity.

As the trial court found, the actual equity value of the marital residence before deduction of any sale costs is $403,735. Utilizing this number, the trial court's award to Husband of only $150,000 in equity would result in Husband receiving an overall distribution of 44%, and Wife receiving 56% of the total marital estate. We determine that such a result would be inequitable considering the evidence presented in light of the statutory factors. Therefore, in order to effectuate the trial court's ostensible overall distribution of 48% of the marital estate to Husband and 52% to Wife, we modify Husband's allocation of equity in the marital residence to $188,000.[2] As the trial court ordered, Wife will be allowed to retain the marital residence as her sole property. She also will be solely responsible for payment of the mortgage and home equity line of credit related to the residence. Wife shall pay to Husband $188,000 in order to purchase his share of the equity in the home. The trial court's division of the marital estate is affirmed in all other respects.

## VI. Attorney's Fees

Wife has requested an award of attorney's fees on appeal as she contends that all of the issues appealed by Husband were within the trial court's discretion. Having granted Husband

---

[1]$403,735 minus $323,020 equals $80,715.

[2]This greater allocation would result in Husband receiving a net estate of $413,899 and Wife receiving a net estate of $448,402. The overall marital estate would be valued at $862,301. Therefore, Husband would receive 48% and Wife would receive 52% of the total estate.

some relief, however, we determine that this is not an appropriate case for an award of attorney's fees on appeal. As this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted).

## VII. Conclusion

For the reasons stated above, we modify the trial court's allocation to Husband of equity in the marital residence from $150,000 to $188,000. The trial court's judgment is affirmed in all other respects. We deny Wife's request for an award of attorney's fees on appeal. This case is remanded to the trial court for enforcement of the judgment as herein modified. Costs on appeal are taxed equally between the parties.

_____
THOMAS R. FRIERSON, II, JUDGE