# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### APRIL 22, 2004 Session

## WILLIAM ANTHONY BACIGALUPO v. MARY DARLENE RAINES BLACKNALL BACIGALUPO

### Direct Appeal from the Circuit Court for Dyer County
### No. 00-101    Lee Moore, Judge

---

### No. W2003-01578-COA-R3-CV - Filed October 4, 2004

---

This case arises from the divorce proceedings of Husband and Wife. Husband filed for a divorce from Wife, citing inappropriate marital conduct and irreconcilable differences as grounds for a divorce. Wife filed her answer and counterclaim, stating she was entitled to a divorce on the basis of inappropriate marital conduct and adultery. The trial court granted Wife a divorce, established Wife as the primary residential parent of Child, divided the parties' marital property, set alimony payments Husband must pay to Wife, imposed a lien on Husband's property to secure the property division and support payments, and awarded Wife a portion of her attorney's fees incurred as a result of the proceedings. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part & Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

James A. Hamilton, III, Dyersburg, TN, for Appellant

Thomas H. Strawn, Dyersburg, TN, for Appellee

### OPINION

#### Facts and Procedural History

William Anthony Bacigalupo ("Husband" or "Appellant") and Mary Darlene Bacigalupo ("Wife," "Appellee," or, collectively with Husband, "the parties") were married on October 22, 1994, in Dyer County, Tennessee. The parties had one child of the marriage, Amanda Jane Bacigalupo ("Child"), born on April 23, 1996. Both parties had married once before, but neither

Husband nor Wife had children from their respective prior marriages. Husband, however, had two stepchildren, Elisha and Hunter Evans, from his prior marriage to Tammy Peel.

Husband obtained his undergraduate degree from the University of Tennessee at Martin, graduated from the Southern College of Optometry, and is an optometrist, having his practice in Dyersburg, Tennessee. At the time of the parties' marriage in 1994, Husband was a sole practitioner of Vision Center ("VC"), which later became an S corporation. However, Wife worked to pay off approximately $88,000 on the second mortgage of the VC building. In April 1996, Husband merged his practice with that of another optometrist, Dr. Brian Robinson ("Dr. Robinson"), establishing a partnership with an interest division of 51/49 percent between Husband and Dr. Robinson, respectively. Husband personally owns the real property for VC, while VC has assets of equipment, receivables, records, and furniture. In April 2000, Dr. Robinson became an equal partner with Husband, each owning a 50% interest in VC. During the marriage, Husband and Dr. Robinson constructed a 3,000 square-foot addition to the VC building, for which Wife guaranteed the loan. Additionally, in April 1997, Husband and Dr. Robinson acquired another practice, which became a limited liability company named Visual Options ("VO") and was originally located at the Dyersburg mall. After the 5-year lease with the mall expired in April 2002, Husband and Dr. Robinson took out a loan from First Citizens National Bank and relocated VO to the property adjacent to the VC property. The trial court found that Husband's earning capacity, based on Husband's tax returns for the previous years, was between $225,000 and $250,000 per year.

Wife holds an undergraduate degree in business administration with a major in accounting from the University of Tennessee at Martin. Additionally, Wife has taken some courses for credit towards her master's degree. At the time of the parties' marriage, Wife was employed by Dyersburg State Community College ("DSCC"), working as the director of continuing education and earning between $31,000 and $32,000 per year. Subsequently, after the second mortgage on the VC property was paid off, Wife resigned from her position at DSCC and began to work for Husband at VC and VO. Wife testified that she worked four to five days a week for two to three hours per day at the optometry clinic. Although the trial court found that most of the business decisions were made by Dr. Robinson and Husband, it found that Wife prepared payrolls, conducted interviews, and organized staff meetings. Since December 2000, Wife has worked for the University of Tennessee in a temporary position that is renewed yearly, earning $28,700 per year. The trial court found that Wife's earning capacity ranged between $25,000 and $45,000 annually.

Child suffers from a hearing impairment, requiring the use of a hearing aid to improve her speech discrimination. Despite this impairment, Child's teacher testified that Child was an exceptional student and always well-prepared for school. Child had advanced far enough in school such that she would receive additional reading instruction from the class a grade above her own.

At the time of the marriage, both Husband and Wife owned their own home and each home was subject to a mortgage. The parties sold their homes and purchased a marital home. Eventually, that home was sold, and the parties moved into the current marital home, which was subject to a mortgage in the amount of $257,572 at the time of divorce.

In January 2000, Husband began having an affair with one of his employees, Tracy Miller ("Miller"). At first, upon being questioned by Wife, Husband denied that he was having an affair. Wife later found out about Husband's affair in February 2000. Subsequently, the parties sought marriage counseling from their minister, Paul Helton. Additionally, Husband sought counseling from Dr. Carolyn West-Willette, a licensed psychologist, and Wife sought counseling from Dr. John Leite, also a licensed psychologist. Further, Wife attended the Caron Foundation for more psychotherapy to address her personal issues of growing up with a father who was an alcoholic.

On June 29, 2000, Husband filed for a divorce from Wife, citing inappropriate marital conduct and irreconcilable differences as grounds for divorce. On July 19, 2000, Wife filed her answer and counter-complaint for divorce, alleging inappropriate marital conduct and adultery. After a hearing on January 6 and 9, 2003, the trial court issued a memorandum opinion, two amendments to such opinion, and a final decree of divorce. The trial court awarded Wife a divorce on the basis of inappropriate marital conduct and adultery, established that Wife would be the primary residential parent for Child, set Husband's child support payments to Wife at $2,108 per month with an additional $300 per month to be placed in an education account for Child, divided the marital property, set Husband's alimony payments to Wife at $1,000 per month for a period of five years, and ordered Husband to pay $10,000 of Wife's attorney's fees, leaving the balance to be paid by Wife. Husband filed his notice of appeal to this Court and presents the following issues, as we perceive them, for our review:

I.      Whether the trial court erred when it refused to appoint a guardian ad litem for Child and/or to subject the parties to a psychological evaluation;
II.     Whether the trial court erred in its division of marital assets;
III.    Whether the trial court erred when it imposed a lien on Husband's assets to secure the payment of the property settlement, child support, and alimony;
IV.     Whether the trial court erred when it refused to hear testimony regarding the nature and value of the marital personal property;
V.      Whether the trial court erred when it awarded Wife alimony for a period of five years, given the short duration of the marriage; and
VI.     Whether the trial court erred when it awarded Wife $10,000 for her attorney's fees.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Standard of Review**

We review a trial court's division of marital property *de novo* upon the record, affording a presumption of correctness to the trial court's findings of fact. Tenn. R. App. P. 13(d); *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)). This Court is mindful that trial courts are given wide discretion by appellate courts with respect to the manner in

which they divide marital assets, and, therefore, marital property divisions are given great weight by this Court on appeal. *Dellinger*, 958 S.W.2d at 780 (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). With regard to an award of alimony, trial courts are given wide discretion because the amount and duration of such alimony awards are affected by the court's findings of fact in consideration of the factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Vaughn v. Vaughn*, No. E2000-02281-COA-R3-CV, 2001 Tenn. App. LEXIS 572, at *4 (Tenn. Ct. App. Aug. 7, 2001) (citing *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 Tenn. App. LEXIS 139 (Tenn. Ct. App. Mar. 5, 1999)). As such, this Court must uphold an alimony award unless the trial court has abused its discretion. *Id.* (citing *Siegel*, 1999 Tenn. App. LEXIS 139 (citing *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989))). Additionally, an award of attorney's fees is likewise within the discretion of the trial court, and we will not interfere with such an award absent a clear showing of an abuse of discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)).

### Guardian Ad Litem and Psychological Examination

First, Husband argues that the trial court erred when it refused to appoint a guardian ad litem or order a psychological examination of the parties to determine what custody arrangement would be in Child's best interest. We begin by noting that, in general, the appointment of a guardian ad litem for a child is a decision within the discretion of the trial court. *See* Tenn. R. Civ. P. 17.03; *see also* 24A Am. Jur. 2d *Divorce and Separation* § 966 (1998). Additionally, Tenn. R. Civ. P. 35.01 states what is required by a moving party to establish the necessity of ordering a physical or mental examination of a party to a civil suit:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Tenn. R. Civ. P. 35.01. "If formal or informal discovery leads to the production of existing examination records, the moving party will not be entitled to insist on further examinations unless it can demonstrate that the prior examinations are insufficient for its purposes." *Odom v. Odom*, No. M1999-02811-COA-R3-CV, 2001 Tenn. App. LEXIS 881, at *20 (Tenn. Ct. App. Dec. 5, 2001).

In this case, we cannot say the trial court erred when it denied Husband's motion for the parties to submit themselves to psychological examinations. At the hearing, the trial court had the benefit of Wife's psychologist, Dr. John Leite, on this witness stand, who had been treating Wife

since August 2000. Husband was provided the opportunity to cross-examine Dr. Leite. Additionally, the trial court was provided the deposition of Husband's psychologist, Dr. Carolyn West-Willette, who had been treating Husband since January 2000. Therefore, in this case, because Husband fails to argue that such evidence is insufficient, we cannot say that the trial court erred when it denied Husband's motion to subject the parties to a psychological examination. Similarly, we cannot say the trial court abused its discretion when it denied Husband's motion to appoint a guardian ad litem for child. Husband states that a guardian ad litem should have been appointed to investigate Wife's alleged propensity to exhibit rage and anger. Husband argues that such behavior requires the appointment of a guardian ad litem to investigate and determine the status of Wife's mental health. However, as noted above, the trial court had sufficient evidence before it in the form of Dr. John Leite's testimony, and Husband had an opportunity to cross-examine Dr. Leite and ask him questions concerning Wife's alleged bouts of rage. Therefore, we cannot say that the trial court erred when it refused Husband's motion to appoint a guardian ad litem or to subject the parties to a psychological examination.

## Marital Property Division

Husband argues that the trial court incorrectly classified the increase in value of VO and VC as marital property because such increase in value occurred following Husband's filing of a divorce complaint. Additionally, Husband argues that Wife did not substantially contribute to the increase in value of VO and VC, and, therefore, she should not be entitled to the increase in value of those businesses. Finally, Husband argues that, because the marriage was short in duration, the trial court erred when it divided the marital assets equally.[1]

Tennessee Code Annotated § 36-4-121 defines what constitutes marital property and separate property for purposes of divorce. Specifically, Tenn. Code Ann. § 36-4-121(b)(1)(A) (2003) provides:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A) (2003). Further, Tenn. Code Ann. § 36-4-121(b)(1)(B) states "marital property" includes "income from, and any increase in value during the marriage of, property

---

[1] The trial court awarded the following marital property to Wife: marital home with a value of $325,000 but equity of $67,428, 2001 van with a value of $4,500, Wife's IRA with a value of $3,268, payment of $8,636 to Wife for signing joint income tax returns, and a payment of $183,692.50 from Husband to Wife to equalize marital estate distribution. The trial court awarded the following marital property to Husband: VC building with a value of $575,000 and an equity of $334,071, Husband's IRA with a value of $14,246, the net increase in value of $105,000 in VC and VO, and an additional $20,000 from a loan. Husband was also required to pay $20,000 to First Citizens National Bank from the loan he took to pay income taxes, another joint loan of $2,100, and a payment of $183,692.50 to Wife to equalize the marital property division.

determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2003). "Once it has been determined that a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property, *all* of the increase in value during the marriage is considered marital property, even though other factors may have contributed to the increase." *Humphries v. Humphries*, No. E2000-02912-COA-R3-CV, 2001 Tenn. App. LEXIS 512, at *14 (Tenn. Ct. App. July 23, 2001) (citing *Ellis v. Ellis*, 748 S.W.2d 424, 426 (Tenn. 1988); *Denton v. Denton*, 33 S.W.3d 229, 237 (Tenn. Ct. App. 2000)). Finally, we note that Tenn. Code Ann. § 36-4-121(b)(1)(D) defines "substantial contribution" to "include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine." Tenn. Code Ann. § 36-4-121(b)(1)(D) (2003).

Under the circumstances of this case, Husband's argument, that the trial court incorrectly classified the increase in value of VC and VO, fails. We begin by noting that VO was a practice that began in April 1997 during the parties' marriage. Therefore, given there is no evidence that such interest was acquired by any means outlined in Tenn. Code Ann. § 36-4-121(b)(2) defining separate property, any interest Husband owned in VO necessarily falls under the definition of marital property in Tenn. Code Ann. § 36-4-121(b)(1)(A). For this reason, any interest or increase in value of Husband's interest in VO must be marital property.

Next, concerning the increase in value of VC, it is true that Husband owned VC before the parties' married, which means that such interest is separate property as defined by Tenn. Code Ann. § 36-4-121(b)(2)(A). However, as we noted above, once a trial court determines that a non-owning spouse has made a substantial contribution to the preservation and appreciation of an owning spouse's separate asset, the entire increase in value during the marriage must be considered marital property. *Humphries*, 2001 Tenn. App. LEXIS 512, at *14. In this case, there was ample evidence that Wife substantially contributed to the preservation and appreciation of VC. The testimony at trial was undisputed that Wife contributed approximately $88,000 of her wages toward the payment of the second mortgage on the VC property. Additionally, Wife contributed indirectly by acting as a homemaker, wage earner, parent, and family financial manager for the marriage, all of which fall under the examples of what "substantial contribution" includes in Tenn. Code Ann. § 36-4-121(b)(1)(D). Further, Wife was an employee at VC and VO, and she worked for over a year, organizing staff meetings and preparing the business' payroll. Therefore, the trial court did not err when it classified the increase in the value of VC and VO as marital property.

Finally, Husband argues that, because the marriage was of such short duration, the division of assets should not have been equal, and Husband should have received a larger portion of the

marital estate. Tennessee Code Annotated § 36-4-121(c) (2003) enumerates what a trial court must consider when equitably dividing marital property:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2003). As the statute suggests, and Husband's argument fails to recognize, there are numerous factors a trial court must consider when dividing a marital estate. Though it is true that the marriage was short in duration, other factors favor the trial court's division of the marital property. As noted above, Wife substantially contributed to the preservation and appreciation of Husband's interest in VC. She directly contributed by paying part of the second mortgage off with her wages and working at VC and VO, and she indirectly contributed by fulfilling her role as a wage earner, homemaker, and parent. Wife's ability for future acquisitions of capital assets and income is less certain than Husband's ability. Wife's position at the University of Tennessee is an occupation renewed on a yearly basis, while Husband holds steady employment at his optometry clinic. Finally, Husband's earning capacity far exceeds Wife's earning capacity. Therefore, we affirm the trial court's division of marital property.

Because Husband's argument over whether the trial court erred in its division of personal property involves the marital property division, we address that issue here. In this case, the parties attempted to present evidence of the value of the parties' household goods. The trial court refused to take evidence on those items and stated that the parties should either agree on a division or the court would order a sale of such items and divide the proceeds. The parties were unable to reach an agreement for division of the household items, and, subsequently, the court awarded Wife all

household goods, furniture, and appliances in her possession except for Husband's items of separate property, without taking any evidence of the values of such household items. As a result, this Court cannot determine whether such division of the household items was equitable in accordance with the division of the remainder of the marital estate. Therefore, in the interest of judicial economy, we remand this case to the trial court for a determination of the values of the parties' household personal property alone, consideration of the factors enumerated in Tenn. Code Ann. § 36-4-121(c) for a division of such marital household items only, and an equitable division of the marital household items in accordance with the division of the remainder of the parties' marital estate.

## Imposition of the Lien

Next, Husband argues that the trial court erred when it imposed a lien on the VC property in order to secure Husband's property settlement obligation of $183,692.50, as well as his payments of child support and alimony. In its final decree of divorce, the trial court, when discussing the property settlement payment of $183,692.50 from Husband to Wife, stated that "[a] lien on the Vision Center, P.C. property is imposed to secure the payment of [Wife's] share of marital property along with the payments of any child support and alimony." We note that "[t]he imposition of a lien on property is an extraordinary and harsh remedy that must be exercised with caution lest injury be done to the obligor spouse and his or her property, and should not be resorted to where less onerous remedies are available." 24A Am. Jur. 2d *Divorce and Separation* § 885 (1998). This Court has previously upheld the imposition of a lien on a party's property where there was evidence that the obligor spouse had committed fraud against the obligee spouse. *Norman v. Norman*, No. 03A01-9702-CV-00047, 1998 Tenn. App. LEXIS 204, at *6-8 (Tenn. Ct. App. Mar. 25, 1998). However, this Court has also upheld a trial court's denial of imposing a lien on an obligor spouse's property where such a lien would hamper the business operations of the obligor spouse and place the obligor's source of income in jeopardy. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (upholding the trial court's denial of wife's request for a lien on dividends distributed from husband's corporations or to require husband to obtain court approval before consenting to sales of corporate property until husband paid wife her interest in the marital estate).

Under the circumstances of this case, we do not think the imposition of a lien on the VC property is appropriate to secure the property settlement and support obligations. In a temporary order for support, Husband was ordered to pay all the bills associated with the marital home, including the payments on the loan secured by the marital home. Additionally, Husband was ordered to pay $1,000 per month to Wife as child support. Finally, Husband was ordered to pay Wife alimony in the amount of $500 per month. Such order was filed in August 2000, and there is no evidence that Husband failed to make one payment pursuant to this order. After our review of the record, we cannot say that an imposition of a lien on the VC property was justified. Therefore, we remand this case to the trial court to revisit this issue and to impose a less onerous method of securing the property settlement and support obligations.

## Alimony

Next, Husband argues that the trial court erred when it awarded Wife alimony, or, in the alternative, erred when it awarded Wife alimony for a period of five years. Tennessee courts are guided by Tenn. Code Ann. § 36-5-101(d)(1) (2001)[2] for determining the amount and duration of alimony payments one spouse must pay to another:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> > (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> > (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> > (C) The duration of the marriage;
> > (D) The age and mental condition of each party;
> > (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> > (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> > (G) The separate assets of each party, both real and personal, tangible and intangible;
> > (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> > (I) The standard of living of the parties established during the marriage;

---

[2] Because the final decree of divorce and the divorce proceedings occurred before Acts 2003, ch. 305, § 2 became effective, amending Tenn. Code Ann. § 36-5-101, the prior version of this statute applies.

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001). The most important factors are the obligee's need and the obligor's ability to pay. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984) (citing *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App. 1981)).

Husband relies on the fact that the marriage was very short in duration, and, therefore, Wife was entitled to alimony for a shorter period, if any at all. Again, Husband ignores the other factors which favor the amount and duration of alimony payments awarded to Wife. In this case, as noted above, Husband's earning capacity far exceeds Wife's earning capacity. The trial court found that Husband has the ability to earn between $225,000 and $250,000 per year. On the other hand, the trial court found that Wife has the ability to earn between $25,000 and $45,000 annually. While Wife holds an undergraduate degree in business administration with a major in accounting, Husband graduated from the Southern College of Optometry and currently practices as an optometrist. Also, as noted above, while Husband has contributed to the marriage as the primary wage earner, Wife has also been a wage earner during the marriage. The evidence also supports the fact that Wife has contributed as a homemaker for the marriage. We also note that Wife, though awarded the marital home, is now responsible for the mortgage payments on that home in addition to her other monthly expenses, increasing her need for alimony. Finally, Husband was at fault for the divorce because of his adultery. Under these circumstances, we cannot say that the trial court erred when it awarded Wife alimony of $1,000 per month for a period of five years.

**Attorney's Fees**

Finally, Husband argues that the trial court abused its discretion when it awarded Wife $10,000 for her attorney's fees. Specifically, in this case, the trial court found that, if Husband paid Wife the property settlement payment of $183,692.50 in a lump sum, Wife would have sufficient funds to pay her attorney's fees. However, because the trial court imposed a lien on Husband's clinic building, Husband argues that the trial court precluded Husband's ability to pay the property settlement payment in a lump sum, and, therefore, Husband necessarily would have to pay $10,000 for Wife's attorney's fees.

An award of attorney's fees is treated like an award of alimony. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000) (citing *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. Ct. App. 1989)). Therefore, the trial court should consider the factors of Tenn. Code Ann. § 36-5-101(d) to determine whether an award of attorney's

fees is appropriate. *Id*. "A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys fees and expenses." *Id*. (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984)). An award for attorney's fees is appropriate when the requesting spouse does not have sufficient funds to pay his or her own legal fees or would be required to deplete his or her assets to pay such fees. *Id*. (quoting *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994)). In this case, Husband argues that he could pay Wife $183,692.50 in a lump sum if no lien were imposed on his clinic building. Additionally, the trial court found that, if Husband paid such property settlement payment in a lump sum, Wife could afford to pay her own attorney's fees. Given our disposition of the issue concerning the lien on Husband's clinic building, we vacate the award to Wife for attorney's fees and remand this issue to the trial court to revisit the question of whether an award of attorney's fees is appropriate.

## Conclusion

For the foregoing reasons, we affirm the trial court's denial of Husband's motion to appoint a guardian ad litem or subject the parties to a psychological examination. We affirm the property division but remand for a determination of the value of the household personalty and a division in accordance with the division of the remainder of the marital estate. We reverse the trial court's imposition of a lien on Husband's business and remand for the imposition of a less onerous means of securing Husband's obligations. We affirm the trial court's award of alimony to Wife. We vacate the award of attorney's fees and remand for a determination of whether such an award is appropriate in light of our reversal of the lien on Husband's business. Costs of this appeal are taxed equally to Appellee, Mary D. Bacigalupo, and Appellant, William A. Bacigalupo, and his surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE